UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS M. VERILE, SR.,

    Plaintiff,

v.                              Case No. 1:18-cv-730

                                  Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

## OPINION

       Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied his claim for disability insurance benefits (DIB) and supplemental security income (SSI).

       Plaintiff alleged a disability onset date of June 15, 2011, which he later amended to November 18, 2012. PageID.41, 211. Plaintiff identified his disabling conditions as: implant, right eye; lower back pain; "degenerative back;" and, re-occurring cataract in right eye. PageID.216. Prior to applying for DIB and SSI, plaintiff completed high school and has specialized training in "Blueprint reading and writing Statistical Process Control Development for Supervisors," and worked in building maintenance repair, quality assurance group leader, and mold setter. PageID.48-49, 217. An Administrative law judge (ALJ) reviewed plaintiff's application *de novo* and entered a written decision finding that plaintiff was disabled as of February 20, 2015. PageID.41-50. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

1

## I. LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905

F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

3

## II. ALJ's DECISION

The ALJ issued a partially favorable decision, finding that plaintiff became disabled as of February 20, 2015. PageID.43. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of November 18, 2012, and that he met the insured status of the Social Security Act through June 30, 2014. PageID.43.

The ALJ made two findings at the second step. First, the ALJ found that:

> Prior to February 20, 2015, the date the claimant became disabled, the claimant had the following medically determinable impairment: degenerative disc disease of the lumbar spine (20 CFR 404.1522 *et seq.* and 416.922 *et seq.*). However, the claimant did not have an impairment or combination of impairments that significantly limited (or was expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant did not have a severe impairment or combination of impairments (20 CFR 404.1522 *et seq.* and 416.922 *et seq.*).

PageID.43-44.

Second, the ALJ found that beginning on February 20, 2015, plaintiff had a severe impairment of degenerative disc disease of the lumbar spine. PageID.46.

At the third step, the ALJ found that beginning on February 20, 2015, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.46.

At the fourth step, the ALJ made no finding of plaintiff's residual functional capacity (RFC) prior to February 20, 2015.

The ALJ's finding at the fourth step commences with plaintiff's condition as of February 20, 2015:

> After careful consideration of the entire record, the undersigned finds that since February 20, 2015, the claimant had the residual fw1ctional capacity to perform less than a full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) except occasionally climb ramps and stairs, occasionally climb ladders, ropes and scaffolds, occasionally balance, stoop, kneel, crouch and crawl. The

4

claimant's work must allow for the exercise of a sit stand option, which is defined as work that can be done in both the sitting and standing positions, such that the change in position will not cause the worker to go off task. After sitting for 30 minutes, the claimant should have the option to stand for up to 10 minutes: after standing for 10 minutes, the claimant should have the option to sit for up to 30 minutes.

PageID.46-47.

The ALJ made no finding with respect to plaintiff's ability to perform his past relevant work prior to February 20, 2015. However, the ALJ found that since February 20, 2015, plaintiff has been unable to perform any of his past relevant work. PageID.48.

At the fifth step, the ALJ made no finding with respect to plaintiff's ability to perform other work in the economy prior to February 20, 2015.

However, the ALJ found that since February 20, 2015, considering the claimant's age, education, work experience and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform. PageID.49. In reaching this determination, the ALJ found that "Even if the claimant had the residual functional capacity for the full range of light work, a finding of 'disabled' is directed by Medical-Vocational Rule 202.06." PageID.49. Accordingly, the ALJ found that plaintiff was not disabled prior to February 20, 2015, but became disabled on that date and has continued to be disabled through the date of this decision. PageID.49.

### III. DISCUSSION

Plaintiff set forth two issues (with sub-issues) on appeal:

**A. Although plaintiff does not contest the ALJ's finding that he is disabled, the ALJ's finding that Mr. Verile's disability did not begin until February 20, 2015 is not supported by substantial evidence and is contrary to SSR 83-20p:**

**1. Substantial evidence does not support the ALJ's rejection of plaintiff's testimony regarding his impairments.**

**2.     The ALJ did not give proper weight to the opinions of plaintiff's treating physician.**

**3.     Mr. Verile was disabled by his 55th birthday, November 18, 2012, or alternatively, no later than his date last insured of June 30, 2014, and he is entitled to an award of Title II / Disability Insurance Benefits (DIB).**

The errors set forth in ¶¶ A.1., 2. and 3. are addressed in detail in ¶¶ B.1. and 2., *infra*.

**B.     The ALJ did not follow the "slight abnormality" standard codified at 20 C.F.R. 404.1520 and in SSR 96-3p when she determined Mr. Verile had no severe impairments prior to February 20, 2015:**

**1.     Substantial evidence does not support the ALJ's rejection of Plaintiff's testimony as to his limitations and cessation of work.**

Plaintiff contends that the ALJ erred by failing to identify plaintiff's vision impairment or degenerative disc disease as severe impairments prior to February 20, 2015. At one point, plaintiff states that "substantial evidence does not support the ALJ's rationale that Mr. Verile's limitations suddenly materialized on February 20, 2015." Plaintiff's Brief at PageID.573. Upon reviewing the record, it appears to the Court that the ALJ found plaintiff disabled based upon MRI results:

> A February 20, 2015 (MRI) of the lumbar spine showed multilevel degenerative changes causing mild to moderate central canal stenosis from L2-L3 to L4-L5 level without impingement of the nerve roots. Trace degenerative retrolisthesis of L4 over L5 (Exhibit 2F/1-2; 7F/2). The record noted the claimant reported left leg cramps and pain with sitting and standing (Exhibit 2F/3-4).

PageID.47. The issue on appeal is whether plaintiff was disabled sometime between November 18, 2012 (his amended onset date) and February 20, 2015 (the date of the MRI).

It appears that the ALJ did not address plaintiff's residual functional capacity (RFC) prior to February 20, 2015, because plaintiff did not have a severe impairment prior to that date. A "severe impairment" is defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).

> [I]n this Circuit the step two severity regulation codified at 20 C.F.R. §§ 404.1520(c) and 404.1521 has been construed as a *de minimis* hurdle in the disability determination process. Under the prevailing *de minimis* view, an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience.

*Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) (internal citations omitted). In essence, the severity finding at step two has evolved into a regulatory screening device:

> [I]t is now plain that in the vast majority of cases a disability claim may not be dismissed without consideration of the claimant's individual vocational situation. Nevertheless, Congress has approved the threshold dismissal of claims obviously lacking medical merit, because in such cases the medical evidence demonstrates no reason to consider age, education, and experience. In other words, as this court has recognized, the severity requirement may still be employed as an administrative convenience to screen out claims that are "totally groundless" solely from a medical standpoint.

*Id.* at 862-63 (internal citations omitted).

Upon determining that a claimant has one severe impairment the ALJ must continue with the remaining steps in the disability evaluation. *See Maziarz v. Secretary of Health & Human Services*, 837 F.2d 240, 244 (6th Cir. 1987). Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error. *Maziarz*, 837 F.2d at 244. However, an ALJ should consider such non-severe conditions in determining the claimant's residual functional capacity. *Id. See Hedges v. Commissioner of Social Security*, 725 Fed. Appx. 394, 395 (6th Cir. 2018) ("[O]nce an ALJ finds that a claimant has at least one severe impairment at step two of the

7

disability analysis, the ALJ must then 'consider the limiting effects of all [the claimant's] impairment(s), even those that are not severe' in evaluating the claimant's ability to work in step four. 20 C.F.R. § 404.1545(e)[.]"). "The fact that some of [the claimant's] impairments were not deemed to be severe at step two is therefore legally irrelevant." *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008).

In 2008, plaintiff had an MRI of his spine which indicated mild to moderate spinal stenosis without compromise of the exiting nerve roots and a left lateral disk herniation. PageID.355. In 2013, while in California, plaintiff failed a DMV test. PageID.281. Plaintiff had a history of cataract surgery in his right eye in 2000, but was developing opacity of the artificial lens. *Id*.; Plaintiff's Brief (ECF No. 14, PageID.571). Plaintiff saw letters blurry and doubled. PageID.282. After an optometry examination, plaintiff was cautioned about driving and referred to an ophthalmic surgeon for consultation. *Id*.

The ALJ addressed both conditions. With respect to plaintiff's back condition, the ALJ stated,

> In terms of the claimant's alleged impairment, the evidence shows the claimant has a history of lumbar spine pain (Exhibit 6F/l). An April 2008, Magnetic Resonance Imaging (MRI) of the lumbar spine showed at L2-L3 mild spinal canal stenosis without compromise of the exiting nerve roots, left lateral disc herniation abuts the exiting left L2 nerve root lateral to the foramen; at L3-L4 mild to moderate spinal canal stenosis without compromise of the exiting nerve roots; and at L4-L5 mild spinal canal stenosis without compromise of the exiting nerve roots and mild grade I retrolisthesis of L4 in relation to LS (Exhibit 6F). The findings at that time were mostly mild, the record contained no evidence of any treatment and the claimant returned to work after the date of the MRI in a heavy job, for a period of time (Exhibit 3E/2; testimony).

PageID.45. As discussed, at Step 2 the ALJ found that this condition was a non-severe impairment of degenerative disc disease of the lumbar spine which existed prior to February 20, 2015. PageID.43-44.

With respect to plaintiff's vision problems, the ALJ stated:

> The claimant alleged some vision difficulties. A February 2013 vision examination noted the claimant had a history of cataract removal from the right eye in 2000. The claimant presented for testing because he failed the test at the department of motor vehicles. Nevertheless, he had no complaints of physical ocular symptoms, no routine headaches or double vision, no reports of visual floaters or light flashes and he was not experiencing blurry or uncomfortable vision (Exhibit lF/1). On examination, the claimant's vision with correction was 20/40++ in the right eye, 20/25 in the left eye and 20/25 in both eyes. Diagnoses included right eye pseudophakia, myopia, regular astigmatism and presbyopia. A spectacle prescription change was advised (Exhibit 1F/2). A finding of a medically determinable impairment cannot be made on the basis of symptoms only, but must also be based on evidence from acceptable medical sources (20 CFR 404.1513; 416.913; 20 CFR 404.1528(a); 416.928(a)). In this instance, only the complaints of the claimant being blind in his right eye [in 2015, PageID.234] support the presence of any impairment. Accordingly, the undersigned finds the claimant's blindness in the right eye was not a medically determinable impairment, prior to the established onset date.

PageID.45.

Unlike the degenerative disc disease, the ALJ did not mention the vision problems at Step 2. Under the facts of this case, the Court does not view plaintiff's vision problems in 2013 to be "*de minimis*" for purposes of a severe impairment, *i.e.*, a history of cataract surgery, problems with an artificial lens (blurry vision, double vision), failing a DMV vision test, and an optometrist's decision to refer plaintiff to a surgeon. *See Higgs*, 880 F.2d at 862. Accordingly, the Court concludes that plaintiff's vision problem diagnosed in 2013 was a severe impairment under Step 2. As discussed, the ALJ's failure to identify a severe impairment at Step 2 is legally irrelevant, provided that the ALJ considers those unidentified impairments in determining plaintiff's residual functional capacity (RFC). *Maziarz*, 837 F.2d at 244; *Hedges*, 725 Fed. Appx. at 395; *Hedges*, 725 Fed. Appx. at 395. Here, however, because the ALJ did not find any other severe impairments, she did not consider the effect of any impairments on plaintiff's RFC until February 20, 2015. Under these circumstances, the ALJ should have found that the vision problem was a severe

impairment and addressed how plaintiff's severe impairment and non-severe impairment of degenerative disc disease affected him from February 21, 2013 (the date of plaintiff's vision examination) (PageID.281) through February 19, 2015 (the day before plaintiff was determined to be disabled). For these reasons, this matter should be reversed and remanded for re-evaluation of plaintiff's claim at steps 3, 4 and 5 during this time frame.

> **2. The ALJ did not give proper weight to the medical opinion of Dr. Haughn, Plaintiff's treating physician as required by 20 C.F.R. 404.1527(c).**

Finally, plaintiff also contends that the ALJ failed to give proper weight to Dr. Haughn's opinions regarding the extent of his degenerative disc disease. As discussed, this non-severe impairment is based upon MRI results from 2008. The only explanation regarding the relevance of this MRI to plaintiff's disability is provided by Edward Haughn, D.O., who treated plaintiff several years later. The ALJ addressed Dr. Haughn's opinions as follows:

> An assessment from January 2017 from Dr. Haughn noted the claimant had back pain that radiated to his legs that caused profound weakness that limited his ability to complete his activities of daily living on his own. As a result, he required continued assistance from his daughter and would require 100 percent caregiver assistance during the time of severe exacerbation, because of his lumbosacral instability with sacroiliitis and sciatica. The claimant had significant difficulty getting up and down, maneuvering, accomplishing daily tasks and getting to his appointments, despite regular aggressive treatment through May 2017 (Exhibit 5F; 8F). In the June 2017 statement, Dr. Haughn indicated the claimant's condition had deteriorated because of his pain and he required regular manual treatment (Exhibit 11F/1-2). . . .
>
> Moreover, Dr. Haughn opined in June 2017 the claimant could occasionally lift and carry 10 pounds and frequently lift and carry less than 10 pounds; stand and walk less than 2 hours and sit about 4 hours in a 8-hour workday; he would need the option to alternate sitting, standing and walking every 20 minutes and would need to shift positions at will; he could rarely twist, stoop, crouch or climb stairs and never climb ladders; with some manipulative limitations and must avoid even moderate exposure to extreme cold, heat and high humidity and must avoid concentrated exposure to fumes, odors, dusts and gases; and would miss more than four days per month (Exhibit 9F; 11F). The opinion is given partial weight as the limitations relating back to 2012 to 2014 is not supported as there is no evidence in

10

> the record to support the claimant had a severe impairment for this period. However, the remainder of the opinion does support the claimant's limitations at the established onset date, specifically the requirements of a sit/stand option, which is supported by continued severe back pain, abnormal examination findings and aggressive treatment with injections, pain medications and manipulative therapy, that provided minimal symptom relief (Exhibits 13E; 2F; 3F; 4F; 5F; 8F; 11F).

PageID.47-48.

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. §§

404.1527(c)(2) and 416.927(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

Based on this record, the Court concludes that the ALJ gave good reasons for assigning partial weight to Dr. Haughn's opinions with respect to plaintiff's non-vision related limitations from 2012 to 2014 because "there is no evidence in the record to support the claimant had a severe impairment for this period." PageID.48. For these reasons, plaintiff's claim of error is denied.

## IV. CONCLUSION

Accordingly, the Commissioner's decision will be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner is directed to re-evaluate plaintiff's disability claim at Steps 3, 4 and 5 for the time period of February 21, 2013 through February 19, 2015. During the re-evaluation, the ALJ must consider both plaintiff's severe impairment of a vision problem and his non-severe impairment of degenerative disc disease of the lumbar spine. A judgment consistent with this opinion will be issued forthwith.

Dated: September 27, 2019 /s/ Ray Kent
United States Magistrate Judge